UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **PATRICK HARRELL** | **CIVIL ACTION NO. 13-2407** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY** | **MAG. JUDGE KAREN L. HAYES** |

RULING

This is a dispute over a denial of disability benefits. Defendant Northwestern Mutual Life Insurance Company ("Northwestern") issued a disability benefits policy to Plaintiff Patrick Harrell ("Harrell") in 2009. Three years later, in July 2012, Northwestern denied Harrell's claim for disability benefits on grounds that he had made a material misrepresentation regarding his illegal drug use on the policy application.

Pending are Northwestern's Motion for Summary Judgment [Doc. No. 37] and its Motion to Strike. [Doc. No. 44]. For the following reasons, the Motion for Summary Judgment is GRANTED, and the Motion to Strike is DENIED AS MOOT.

I. FACTS AND PROCEDURAL HISTORY

Since the early 2000's, Harrell has acted as the chief executive officer of Premier Food Group, LLC ("Premier"), the company he founded. In May 2009, Harrell contacted James Whitaker ("Whitaker"), an independent contractor agent with Northwestern in Alabama, about the possibility of getting a disability policy through Premier for himself. Harrell told Whitaker that another insurer, New York Life, had previously denied his application for disability insurance because he had admitted on that application that he had used cocaine. Harrell testified that he was concerned that

if he were honest about his drug use on the Northwestern application, as he was with New York Life, he would be turned down again. [Doc. No. 37, Exh. 4, Harrell Depo., p. 50-55, 67-68]. According to Harrell, Whitaker then instructed him "not to mention" his illegal drug use.

As part of the application process, Harrell was required to undergo a medical examination and respond to questions regarding his medical history.   In this examination, on May 20, 2009, approximately two weeks before he signed and submitted his disability policy application, Harrell was asked whether he had used or tested positive for marijuana, cocaine, heroin, amphetamines, or hallucinogens in the past 10 years. Harrell responded "no" on the provided form. [Doc. No. 37, Exh. 1, Medical History Questionaire, p. 1].

During the subsequent underwriting process, it came to Northwestern's attention through the Medical Information Bureau that Harrell possibly had a history of illegal drug use. Northwestern's investigation revealed only that Harrell had disclosed drug use on a prior insurance application, but Northwestern was unable to obtain medical records indicating such. [Doc. No. 37, Exh. B., Deposition of Susan Schlueter ("Schleuter Depo."), pp. 12-13].   Consequently, in July 2009, Northwestern sent Harrell a questionnaire to confirm whether or not he had a history of drug abuse. *Id.* at 14.   Harrell answered only that he had used prescription Adderall and Eskalith. [Doc. No. 37, Exh. 2, Drug Use Questionnaire, p. 1]. Because Harrell had not addressed whether he had used the illegal drugs referenced in the questionnaire, Northwestern sent Harrell a follow-up questionnaire in September 2009, asking whether he had used "marijuana or cocaine, or any narcotic drugs not prescribed by a physician." [Doc. No. 37, Exh. 3, Follow-Up Questionnaire, p. 1]. Harrell answered "NO" and signed the document. *Id.*

Based on Harrell's application and on his repeated denials of illegal drug use, Northwestern

decided to issue Harrell a disability policy with a medical rating for his disclosed bipolar disorder. [Doc. No. 37, Exh. B., Schleuter Depo., p. 17]. However, as a condition of receiving the policy, Harrell was asked to sign a Personal Health and Status Declaration declaring that he had not taken any illegal drugs, unless noted in the form or previously disclosed. [Doc. No. 37, Exh. 4, Harrell Declaration, p. 1]. Harrell signed the form on December 7, 2009, without comment. *Id.*

On July 31, 2012, Harrell filed a claim for disability benefits based on his bipolar disorder. During Northwestern's investigation of the claim, Harrell's health care providers disclosed documentation indicating that Harrell had a history of substance abuse that predated the underwriting of the policy and that the drug use had continued up until the time of his claim for benefits. [Doc. No. 37, Exh. D, Schlueter Affidavit, ¶ 8]. After further investigation and review of Harrell's application, Northwestern determined it would not have issued the policy had it known of Harrell's drug use. *Id.* Accordingly, Northwestern denied Harrell's claim and then rescinded the policy based on material misrepresentations during the underwriting process. *Id.* at ¶ 9.

On June 20, 2013, Harrell filed a Petition in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana, claiming Northwestern wrongfully denied his claim. [Doc. No. 1]. The matter was removed to this Court on August 6, 2013. [Doc. No. 4]. Harrell argues the policy is enforceable because he alleges the documents containing his misrepresentations were not attached to the policy he received and because he claims his false statements were not material.

Northwestern argues it delivered the policy to Harrell alongside Harrell's original application, the signed Medical History Questionnaire, the July 2009 questionnaire indicating prescription drug usage, the September 2009 follow-up questionnaire in which Harrell denied illegal drug use in the past ten years, and Harrell's December 2009 health Declaration in which Harrell again confirmed

3

that he had not used illegal drugs in the prior ten years. [Doc. No. 37, Exh. 6].

Harrell testified in his deposition that he did not remember the policy being delivered to him. [Doc. No. 37, Exh. 4, Harrell Depo., p. 111].[1]  But Harrell apparently acknowledged that the disability policy delivered to him included his application as well his responses to the questionnaires. [Doc. No. 37, Exh. 4, Harrell Depo., p. 100-101].[2]  During his deposition, Harrell did not dispute the fact that the application and follow-up questionnaires were attached to the policy.  Even though Harrell reviewed the deposition transcript and made 13 pages of corrections, he did not alter this testimony or indicate that the questionnaires were **not** attached to the policy. [Doc. No. 44, Exh. A, Harrell Errata Sheets].  Nonetheless, in his opposition to the instant motion for summary judgment, Harrell attached an affidavit averring that he "did not receive a copy of the policy application, only the policy." [Doc. No. 41, Exh. A, Harrell Affidavit, ¶ 3].

On August 27, 2014, this Court issued a Ruling and Judgment, holding that the Employee Retirement Income Security Act of 1974 did not govern Harrell's disability policy. [Doc. Nos. 34 & 35].

On December 4, 2014, Northwestern filed the instant Motion for Summary Judgment. [Doc. No. 37].  On January 2, 2015, Harrell filed an opposition [Doc. No. 41], to which Northwestern replied. [Doc. No. 45].

On January 16, 2015, Northwestern filed a Motion to Strike Harrell's Affidavit. [Doc.

---

[1] When asked whether he remembered the policy being delivered to him, Harrell responded, "I don't remember that, but we have it. I guess so."

[2] Q: "And I want us to get a note that your application and your statements regarding the applications were attached to the policy . . . . And I'll show you the disability insurance application; do you see that?" A: "Yes, sir."

No. 44]. Harrell filed an opposition memorandum. [Doc. No. 48]. Northwestern filed a reply. [Doc. No. 50].

**II.  LAW AND ANALYSIS**

    **A.  Standard of Review**

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the

nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

      B.      **Motion for Summary Judgment**

Northwestern moves the Court for summary judgment arguing it properly denied Harrell's claim when it learned that Harrell lied about his prior drug use on his original application. While Harrell admits he lied on the application and on the follow-up questionnaires, he argues Northwestern is not entitled to summary judgment for two reasons: (1) because his statements on the original application were not material and (2) because the follow-up questionnaires were not attached to the disability policy when it was delivered to him and thus cannot be considered. In reply, Northwestern argues that summary judgment is appropriate, even if the follow-up questionnaires were not attached, because Harrrell's admitted misrepresentation on the initial application was material.

Because the Court is sitting in diversity, the Court applies the substantive law of Louisiana, the forum state. *See, e.g., Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).[3]

Under Louisiana law, to avoid coverage on grounds of misrepresentation, the insurer must show that (1) the insured made a false statement in his application for the insurance policy, (2) the false statement was made with the intent to deceive, and (3) the false statement materially affected the acceptance of the risk by the insurer or the hazard assumed. *Wohlman v. Paul Revere Life Ins.*

---

[3] The parties do not dispute that Louisiana law governs this case. Even if Alabama law controls (which it conceivably could because of the choice of law clause in the policy), the Court would reach the same conclusions outlined below. If anything, the relevant Alabama law provides greater support for the Court's conclusions. *See, e.g.,* ALA. CODE § 27-14-6.

*Co.*, 980 F.2d 283, 285-86 (5th Cir. 1992) (citing *Coleman v. Occidental Life Insurance Co. of N.C.*, 418 So. 2d 645, 646 (La.1982); *Clark v. Golden Rule Ins. Co.,* 887 F.2d 1276, 1281 (5th Cir. 1989)). In order for Northwestern to show Harrell's intent to deceive, strict proof of fraud is not required; rather, intent can be determined from the surrounding circumstances indicating that Harrell knew his representations were false and recognized that they were material. *Willis v. Safeway Ins. Co. of Louisiana*, App. 2 Cir.2007, 42,665, p. 7 (La.App. 2 Cir. 10/24/07); 968 So.2d 346, 350. A misrepresentation is material if the truth would have resulted in the insurer not issuing the policy of insurance or issuing the policy at a higher rate. *Abshire v. Desmoreaux*, 2007-626, p. 9 (La.App. 3 Cir. 11/7/07); 970 So.2d 1188, 1196.

Unless the application for insurance is attached to the policy when issued and delivered, the application does not become part of contract and, therefore, cannot be admitted into evidence to support an insurer's claim of material misrepresentation. *See* LA. REV. STAT. ANN. 22:857(A).[4] *See also La. Health Services and Indem. Co. v. Brown Builders, Inc.*, 32,575 (La.App. 2 Cir. 12/8/99);747 So.2d 708; *Savage v. La. Health Serv. & Indem. Co.*, 33,853 (La. App. 2 Cir. 9/27/00); 768 So. 2d 760, 763.

Harrell does not dispute the first two elements of Northwestern's defense–that he made false statements with an intent to deceive. He contends only that the materiality element has not been satisfied, arguing his admitted lie on the original application was immaterial because Northwestern

---

[4] "No application for . . . insurance shall be admissible in evidence in any action relative to the policy or contract, unless a correct copy of the application is attached to or otherwise made a part of the policy, or contract, when issued and delivered." LA. REV. STAT. ANN. 22:857(A).

did not decline to issue the policy immediately, but instead investigated further when it was alerted of his possible drug history.[5]

The Court finds Harrell's misrepresentation on the original application was material. Schlueter, an underwriting analyst with Northwestern, avers that "[c]onsidering the underwriting standards in effect at the time of Mr. Harrell's application, I determined that Northwestern would not have issued the Policy had we known of Mr. Harrell's illegal drug use." [Doc. No. 37, Exh. D, Schlueter Affidavit, ¶ 9]. This statement is entirely consistent with what happened when Harrell was honest about his drug abuse on his application for disability insurance to New York Life and was denied. The fact that Northwestern investigated Harrell's potential drug use before issuing the policy does not, as Harrell argues, impact the materiality of his misrepresentation on the application. If anything, Northwestern's investigation confirms Harrell's potential drug use materially affected its acceptance of risk. Therefore, Northwestern's Motion for Summary Judgment is GRANTED, and Harrell's claims are DISMISSED WITH PREJUDICE.

---

[5] Harrell also argues that his misrepresentations during the ensuing investigation are inadmissible to prove material misrepresentation, claiming those questionnaires were not attached when Northwestern delivered the policy. To support this claim, Harrell avers that "I did not receive a copy of the policy *application*, only the policy." [Doc. No. 41, Exh. A, Harrell Affidavit, ¶ 3] (emphasis added). However, after this affidavit was signed, Harrell's counsel admitted that the application *was* attached to the delivered policy, directly contradicting the affidavit. Harrell now apparently asks the Court to construe his affidavit to mean that the follow-up questionnaires, rather than the explicitly stated application, were not delivered with the policy. The Court need not reach this argument given its conclusion that Harrell's misrepresentation on the original application was material.

### C. Motion to Strike

Northwestern moves the Court to Strike portions of Harrell's affidavit on grounds that his deposition testimony directly contradicts that affidavit. However, considering the Court's ruling above, this motion is DENIED AS MOOT.

### III. CONCLUSION

For the foregoing reasons, Northwestern's Motion for Summary Judgment is GRANTED and Harrell's claims are DISMISSED WITH PREJUDICE. Northwestern's Motion to Strike is DENIED AS MOOT.

MONROE, LOUISIANA, this 25th day of March, 2015.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE